THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**KAMAL HOKAN**     **PLAINTIFF**

**v.**     **CIVIL CASE NO. 4:23-CV-3-RP**

**COMMISSIONER OF SOCIAL SECURITY**     **DEFENDANT**

## OPINION AND JUDGMENT

Kamal Hokan seeks judicial review pursuant to 42 U.S.C. § 405(g) of the unfavorable decision of the Commissioner of Social Security regarding an application for a period of disability and disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The undersigned held a hearing on August 9, 2023. Having considered the record, the administrative transcript, the briefs of the parties, the oral arguments of counsel and the applicable law, the undersigned finds the Commissioner's decision is not supported by substantial evidence and should be remanded.

## Standard of Review

In determining disability, the Commissioner, through the Administrative Law Judge ("ALJ"), works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

1

gainful activity.[3]  Second, plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4]  At step three the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5]  If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[6]  At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7]  If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990).  The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial

---

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010).  If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 416.925 (2003).

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[7] 20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[8] *Muse*, 925 F.2d at 789.

2

evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

## **Commissioner's Decision**

At step one of the sequential analysis, the ALJ found that the plaintiff has not engaged in substantial gainful activity since the alleged onset date. At step two, he found that the plaintiff has the severe impairment of depression. At step three, he found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a

---

[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

listed impairment. The ALJ then found the plaintiff has the residual functioning capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:

> The claimant can perform routine and repetitive tasks; carry out short, simple instructions; sustain concentration, persistence, and pace for 2 hour periods of time; make simple work-related decisions; infrequently or incidentally interact with coworkers and supervisors; never interact with the general public; adapt to occasional and gradually introduced changes in the workplace; cannot manage money; cannot perform jobs requiring mathematical calculations; cannot perform work requiring a specific production rate; and requires supervisory reminders twice in an 8-hour workday.

At step four, the ALJ found that the plaintiff is unable to perform any of his past relevant work. Finally, at step five, the ALJ found that considering the plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that the plaintiff can perform, such as the jobs of bench assembler, small parts assembler and hand packager. As such, the ALJ concluded that the plaintiff is not disabled.

## Discussion

The plaintiff makes several arguments of error on appeal. As discussed below, the court finds two of the arguments have such merit as to warrant reversal of the Commissioner's decision.[11]

First, the plaintiff argues that the ALJ failed to properly consider the opinions of Faseeh Hadidi, MD, a neurologist who supervised the plaintiff's work as a neurologist for nine years leading up to the alleged onset date – and also a close personal friend of the plaintiff. Dr. Hadidi submitted a third-party function report describing how the plaintiff's condition limits his activities. According to

---

[11] For the reasons announced on the record at the conclusion of oral argument, the court finds no reversible error among the other issues raised by the plaintiff on appeal.

Dr. Hadidi, the plaintiff's condition affects his memory, ability to complete tasks, concentration, ability to follow instructions, and ability to get along with others. Dr. Hadidi's report states the plaintiff is always depressed, always tired, lacks focus and motivation, and when in deep depression must stay in his room two to three days. Dr. Hadidi wrote that the plaintiff is very withdrawn and does not initiate contact with friends or family. Sentences must be repeated two or three times in order for the plaintiff to grasp them. Dr. Hadidi's report states the plaintiff has a very short attention span, may forget what was just discussed, and frequently fails to complete tasks.

Dr. Hadidi also submitted a letter explaining that the plaintiff has suffered from chronic depression for years, and that as a friend and colleague, Dr. Hadidi tried to extend a helping hand by allowing the plaintiff to work in Dr. Hadidi's neurology clinic for nine years, until the plaintiff was hospitalized for severe psychogenic dysphagia secondary to chronic depression in August of 2020.[12] The plaintiff's time working at the clinic was very difficult for Dr. Hadidi, the plaintiff, and the patients. According to Dr. Hadidi's letter, the plaintiff's concentration was frequently poor and his sleep was impaired, resulting in him showing up late for work more often than not. Patients complained that the plaintiff repeated questions again and again, unable to remember what had just been said to him. According to Dr. Hadidi, the plaintiff's response to treatment was poor, and Dr. Hadidi finally made the difficult decision that the plaintiff could no longer work at the clinic after he was hospitalized at the Mississippi State Hospital at Whitfield. The medical records reflect that Dr. Hadidi continued to be the primary – if not the only – point of contact for doctors and other hospital staff to discuss the plaintiff's care during his hospitalization.

---

[12] The plaintiff was eventually involuntarily committed for long term psychiatric treatment at the Mississippi State Hospital at Whitfield, all during the relevant time period.

With respect to each of Dr. Hadidi's written submissions, the ALJ states in his decision denying benefits that "this is a layperson opinion under the current rules with little to no persuasive value." The plaintiff takes issue with these findings, arguing that the ALJ should properly have considered Dr. Hadidi's submissions as medical opinions in accordance with the Commissioner's framework for considering medical opinions set forth in the regulations. 20 C.F.R. § 404.1520c. In response, the Commissioner argues that Dr. Hadidi does not qualify as a "medical source" whose statement regarding a plaintiff's impairment-related limitations must be considered as a medical opinion under the regulations. However, as the plaintiff points out, the regulations define a "medical source" as, among other individuals, "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502(d). It seems that Dr. Hadidi meets this definition.

The Commissioner argues that Dr. Hadidi does not qualify because he did not provide health care treatment to the plaintiff as a patient, and because Dr. Hadidi's statements are made instead on the basis of his observations as the plaintiff's friend and supervisor. However, there is no requirement that a medical source have a treating relationship with a claimant in order for that individual's opinion to be considered a medical opinion. Rather, a medical source's relationship with the claimant is one of several factors to be considered by an ALJ when determining how persuasive he finds a medical opinion to be. 20 C.F.R. § 404.1520c(c).

Even if the Commissioner were correct, and Dr. Hadidi's opinions are those of a layperson under the rules and do not constitute medical opinions, this does not mean that they therefore have little or no persuasive value as the ALJ found. The regulations specify the types of evidence "that is inherently neither valuable nor persuasive," and nowhere among them are

6

statements about a claimant's impairment-related limitations by a physician who is a close personal friend and long-time supervisor of the claimant, and whose opinions are supported by years of observations of the claimant in and out of the workplace. Whether Dr. Hadidi's statements constitute medical opinions or not, the ALJ was required to give them their due consideration and failed to do so. Given their supportability and consistency with other evidence in the record, proper consideration of Dr. Hadidi's opinions may have resulted in a different administrative outcome, and therefore the error is not harmless.

The plaintiff argues additionally that the Appeals Council failed to properly consider new evidence submitted by the plaintiff after the date of the ALJ's decision, specifically treating psychologist Barry Vinick, PhD's assessment of the plaintiff's mental limitations in the ability to perform work-related activities. Under the applicable regulation, the Appeals Council will review a case based on newly submitted evidence only if the evidence "is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). The Appeals Council's decision whether to review a case is discretionary. *Smith v. Berryhill,* 139 S.Ct. 1765, 1772, 204 L.Ed.2d 62 (2019).

In its decision denying review in this case, the Appeals Council found that the evidence from Dr. Vinick "does not show a reasonable probability that it would change the outcome of the decision." The plaintiff argues this finding is erroneous, and the court agrees. A reasonable probability of a different result means "a probability sufficient to undermine confidence in the outcome." *Artis v. Kijakazi,* No. 3:21CV13-DAS, 2022 WL 704205, at *4

(N.D. Miss. Mar. 8, 2022) (quoting *Strickland v. Washington,* 466 U.S. 668, 669 (1984)). "[T]he likelihood of a different result must be substantial, not just conceivable." *Artis,* 2022 WL 704205, at *4 (quoting *Harrington v. Richter,* 562 U.S. 86, 112 (2011)). "But it does not require a showing that … [the new evidence] more likely than not altered the outcome." *Artis,* 2022 WL 704205, at *4 (quoting same).

In the present case, Dr. Vinick, a mental health specialist, began treating the plaintiff during the relevant time period and had seen the plaintiff four times in the span of just over three weeks when he provided his assessment. Dr. Vinick opined that as a result of his mental impairments, the plaintiff has, among other limitations, extreme difficulties maintaining social functioning and extreme deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner, along with episodes of decompensation lasting two weeks or more during a one-year period. Dr. Vinick opined that the plaintiff is unable to maintain attention for two-hour segments, is unable to sustain an ordinary routine without special supervision, is unable to complete a normal workday and workweek without interruptions from psychologically based symptoms, and would be absent from work three or more times per month as a result of his impairments or treatment.

In support of his assessment, Dr. Vinick provided the following: a copy of the treatment notes of his first session with the plaintiff; a letter Dr. Vinick received from Dr. Hadidi describing his experience with the plaintiff over the years as his supervisor; a statement by Dr. Vinick summarizing the mental health history he obtained from the plaintiff during his treatment sessions; and Dr. Vinick's diagnostic impressions of major depression, recurrent, severe; attention deficit disorder; generalized anxiety disorder; and social anxiety. Given the

materiality of this new evidence from a treating specialist and its supportability and consistency with other evidence in the record, the Appeals Council abused its discretion in finding no reasonable probability that it would change the outcome of the decision.

For these reasons and for those announced on the record at the conclusion of oral argument, the Commissioner's decision is REVERSED and REMANDED for a rehearing of the plaintiff's application under the fourth sentence of § 405(g).

**SO ORDERED**, this the 14th day of August, 2023.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE